## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JAMES ROBINSON,**

       **Petitioner,**

       **v.**

**WARDEN, PICKAWAY**
**CORRECTIONAL INSTITUTION,**

       **Respondent.**

**CASE NO. 2:19-CV-2636**
**JUDGE MICHAEL H. WATSON**
**Chief Magistrate Judge Elizabeth P. Deavers**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this *pro se* petition for a writ of habeas corpus under 28

U.S.C. § 2254.  Petitioner seeks release from confinement imposed pursuant to a state-court

judgment in a criminal action.  This case has been referred to the Undersigned pursuant to 28

U.S.C. 636(b) and Columbus' General Order 14-1 regarding assignments and references to

United States Magistrate Judges.

Petitioner has filed a Motion for Leave to Proceed in forma pauperis.  (ECF No. 4.)

Upon consideration, the Court finds the Motion is meritorious, and, therefore, it is **GRANTED.**

**WHEREUPON, IT IS ORDERED THAT** the Petitioner be allowed to prosecute this action

without prepayment of fees or costs and that judicial officers who render services in this action

shall do so as if the costs had been prepaid.

This matter is before the Court on its own motion under Rule 4 of the Rules Governing

Section 2254 Cases in the United States District Courts ("Rule 4").  Pursuant to Rule 4, the Court

conducts a preliminary review to determine whether "it plainly appears from the face of the

petition and any attached exhibits that the petitioner is not entitled to relief . . ."  If it does so

appear, the petition must be dismissed. *Id*. With this standard in mind, and for the reasons that

follow, these are the circumstances here.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner challenges his convictions after a jury trial in the Franklin County Court of

Common Pleas on eight counts of trafficking in heroin. The Ohio Tenth District Court of

Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} On December 11, 2014, a Franklin County Grand Jury indicted Robinson
> with eight counts of trafficking in heroin in violation of R.C. 2925.03(A)(2),
> felonies of the second degree. The charges arose out of a criminal investigation of
> drug activity in the south end of the Columbus area. Robinson entered a not guilty
> plea and proceeded to a jury trial.
>
> {¶ 3} At the trial, Detective Whitacre testified that the city of Columbus, Division
> of Police, had received a citizen complaint from a group of individuals regarding
> drug activity in the south end of Columbus in the area of Groveport Road and State
> Route 104. After talking with informants, patrol officers and other detectives, it was
> determined that there were several individuals who were working together in this
> area to sell heroin, cocaine, pills, and marijuana. Based on the information gathered,
> Detective Whitacre applied for and received authorization to wiretap the phone of
> Keith Pippins. Eventually, the wiretap expanded to Jack Morris and three other
> individuals.
>
> {¶ 4} During the investigation, the police intercepted a total of 55 calls between
> Pippins and 589–xxxx. In some of the calls, Pippins would tell the other person
> what drugs he had available, and the person would say what he wanted. Other calls
> concerned the timing and location when the two would meet. Detective Ehrenborg,
> who was assigned to listen to intercepted calls, testified that he immediately
> recognized Robinson's voice as the other person on the phone with Pippins in these
> calls. Detective Ehrenborg stated that he had known Robinson approximately 18
> years and met with him five to ten times during that period. The detective had no
> doubt that it was Robinson talking with Pippins.
>
> {¶ 5} After one of the intercepted calls with 589–xxxx on February 8, 2014, a
> surveillance team was sent out to the location that Pippins had arranged to meet
> with the other person. The surveillance team located Pippins' Range Rover and also
> a green Expedition. The tag on the Expedition was registered to Robinson. The
> surveillance team was sent out again following an intercepted call with 589–xxxx
> on February 17, 2014. The videotape showed the green Expedition arriving at the
> location that Pippens had directed the other person to come to. The driver got out
> the vehicle and entered the residence that had Pippins' Range Rover in the

2

driveway. Shortly thereafter, the driver reemerged from the house and drove away. Detective Ehrenborg was shown the video at trial, and he identified Robinson as the person who drove the green Expedition, entered the residence, and left soon after.

{¶ 6} Detective Whitacre testified that the investigation came to an end on March 7, 2014. A search warrant executed at Pippins' residence resulted in approximately 180 grams of heroin and a cellphone being seized among other items. The cellphone's SIM card was analyzed and showed a contact entry identified as Jimmy with the number 589–xxxx.

{¶ 7} At the end of the state's case, Jack Morris testified that he was partners with Pippins. He also knew Robinson as they had grown up in the same neighborhood. Morris entered a plea agreement with the state which required him to testify as required by the state. He identified the voices on the intercepted calls as belonging to Robinson and Pippins. After the state rested, Robinson made a Crim.R. 29 motion for acquittal. The trial court denied it.

{¶ 8} The jury found Robinson guilty of all 8 counts of trafficking and also found that the amount of heroin involved was greater than or equal to 10 grams but less than 50 grams. The trial court sentenced Robinson to 2 years on each count and ordered that they be served consecutively for a total of 16 years.

The Appeal

{¶ 9} Robinson appeals his convictions and assigns the following assignments of error:

[I.] THE STATE PRODUCED INSUFFICIENT EVIDENCE TO SUPPORT THE DEFENDANT'S CONVICTION.

[II.] THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

[III.] THE EVIDENCE AGAINST MR. ROBINSON WAS INSUFFICIENT TO SUSTAIN A JURY VERDICT OF GUILTY.

[IV.] THE TRIAL COURT ERRED BY PERMITTING THE STATE TO INTRODUCE "OTHER ACTS" EVIDENCE THAT WAS UNFAIRLY PREJUDICIAL TO THE DEFENDANT.

*State v. Robinson*, 10th Dist. No. 17AP-5, 2018 WL 2113628, at *1-2 (Ohio Ct. App. May 8,

2018).  On May 8, 2018, the appellate court affirmed the judgment of the trial court. *Id*.

Petitioner did not file a timely appeal.  The docket of the Ohio Supreme Court indicates that, on

June 25, 2018, Petitioner filed a motion for leave to file a delayed appeal. As cause for his

untimely filing, his attorney, Adam Lee Newmann, indicated that Petitioner had just retained him

several weeks after the appellate court's May 8, 2018, decision denying the appeal, and

Newmann needed additional time to prepare the appeal. He indicated as follows:

> Appellant is currently incarcerated at Pickaway Correctional Institution, and
> counsel had had difficulty communicating with Appellant, scheduling several
> collect-telephone calls with him in an effort to obtain his input regarding the case.
> The communication delays have made the 45 day limitation for filing the
> Memorandum in Support of Jurisdiction difficult to adequately prepare the request;
> as such, appellate counsel is requesting leave to prepare the Memorandum in
> Support of Jurisdiction in this case one (1) business day past the time limitation.

Memorandum in Support of Motion for Leave to File a Delayed Appeal on Behalf of Appellant

James Robinson, http://www.sconet.state.oh.us/Clerk/ecms/#/caseinfo/2018/0902. On August

15, 2018, the Ohio Supreme Court denied the motion for a delayed appeal. *State v. Robinson*,

153 Ohio St.3d 1460 (Ohio 2018).

On June 21, 2019, Petitioner filed this *pro se* habeas corpus petition. He asserts, as his

sole claim for relief, that the evidence is constitutionally insufficient to sustain his convictions on

eight counts of trafficking in heroin. The record indicates that Petitioner has procedurally

defaulted this claim.

## II. PROCEDURAL DEFAULT

Congress has provided that state prisoners who are in custody in violation of the

Constitution or laws or treaties of the United States may apply to the federal courts for a writ of

habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to

protect the constitutional rights of criminal defendants, and in order to prevent needless friction

between the state and federal courts, a state criminal defendant with federal constitutional claims

is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c).

4

If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986);

*see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part

analysis of *Maupin*).  First, the court must determine that there is a state procedural rule that is

applicable to the petitioner's claim and that the petitioner failed to comply with the rule.  Second,

the court must determine whether the state courts actually enforced the state procedural sanction.

Third, the court must determine whether the forfeiture is an adequate and independent state

ground on which the state can rely to foreclose review of a federal constitutional claim.  *Maupin,*

785 F.2d at 138.  Finally, if "the court determines that a state procedural rule was not complied

with and that the rule [has] an adequate and independent state ground, then the petitioner" may

still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause

sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged

constitutional error.  *Id.*

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner

must show that "some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Constitutionally ineffective counsel may constitute cause to excuse a procedural default.

*Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  In order to constitute cause, an ineffective

assistance of counsel claim generally must "'be presented to the state courts as an independent

claim before it may be used to establish cause for a procedural default.'"  *Edwards*, 529 U.S. at

452 (quoting *Murray v. Carrier*, 477 U.S. at 479).  That is because, before counsel's

ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the

Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted."

*Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).  Or, if procedurally defaulted,

petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the

ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The

Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" Id., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a

procedural default occurred, it must not consider the procedurally defaulted claim on the merits

unless "review is needed to prevent a fundamental miscarriage of justice, such as when the

petitioner submits new evidence showing that a constitutional violation has probably resulted in

a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir.

2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

This Court may sua sponte raise the issue of procedural default. *See Sheppard v. Bagley*, 604 F.Supp.2d 1003, 1013 (S.D. Ohio 2009) (citing *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *r'hng and r'hng en banc denied July 6, 2005* (citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002) ); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) ); *see also Watkins v. Warden, Dayton Corr. Inst.*, No. 2:16-cv-00501, 2016 WL 4394138, at \*2 (S.D. Ohio Aug. 18, 2016) ("[A]lthough federal courts are not required to raise procedural default sua sponte, neither are they precluded from doing so.").

## A. Application

Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions. Petitioner raised this same issue on direct appeal. Nevertheless, he failed thereafter to file a timely appeal to the Ohio Supreme Court. The Ohio Supreme Court denied his motion for a delayed appeal. Petitioner thereby has waived this claim for review in these proceedings. *See Smith v. State of Ohio Dept. of Rehab. & Corr.*, 463 F.3d 426, 431–32 (6th Cir. 2006) (citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)); *Depinet v. Bunting*, No. 3:14-cv-1366, 2015 WL 5675076, at \*6–7 (N.D. Ohio Sept. 25, 2015) (citations omitted).

Further, the record reveals that Petitioner cannot establish cause for his procedural default. It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla*, 370 F.3d at 498. Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner complains that his attorney failed to file a timely appeal in the Ohio Supreme Court based upon an unfounded financial error, and "wrongly and arbitrarily blamed

8

petitioner for causing the delay[.]" (*Petition*, ECF No. 1, PAGEID # 3.)  Petitioner states that he

filed a grievance against his attorney, and the Ohio Disciplinary Counsel found that his attorney

acted improperly.  (*See id*.)  However, these allegations are without support.

Moreover, the denial of the effective assistance of counsel generally cannot constitute

cause for a procedural default in proceedings, such as in the Ohio Supreme Court, where the

petitioner has no right to the assistance of counsel.  *See Young v. Westbrooks*, 702 F. App'x 255,

259 (6th Cir. 2017) (a petitioner must "bear the risk" of attorney errors that occur in collateral

proceedings, where they do not have the right to counsel) (citing *Coleman*, 501 U.S. at 753); *see*

*Graggs v. Warden, Lebanon Corr. Inst*., No. 2:12-cv-190, 2013 WL 2404076, at *14 (S.D. Ohio

May 30, 2013) (citing *Wilson v. Hurley*, 382 F. App'x 471, 478 (6th Cir. 2010); *Pennsylvania v.*

*Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of

right, and no further.").  Further, mere attorney ignorance or inadvertence will not excuse a

procedural default.  *Young v. Westbrooks*, 702 F. App'x at 259 (citing *Coleman*, 501 U.S. at

753).  An attorney's negligence, or error in missing a filing deadline, does not establish cause for

a procedural default.  *Id*. at 262 (citing *Maples v. Thomas,* 565 U.S. 266,  281 (2012); *Ryder v.*

*Sec'y Dept't of Corrs*., 521 F. App'x 817, 820 (11th Cir. 2013)).

Additionally, the record does not reflect that this is "an extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent"

so as to excuse Petitioner's otherwise procedurally defaulted claims.  *Murray*, 477 U.S. at 496;

*see Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005).

### III.  RECOMMENDED DISPOSITION

For the foregoing reasons, the Undersigned **RECOMMENDS** that this action be

**DISMISSED.**

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

 s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
Chief United States Magistrate Judge